IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA (ERIE)

| | | |
|---|---|---|
| ENVIRONMENTAL COORDINATION SERVICES & RECYCLING, INC., | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | CIVIL ACTION NO: 17 - CV- 101 _____ |
| BUCK BALDWIN and ENVIROTHINK, INC., | ) ) ) | **Jury Trial Demanded** |
| Defendants | ) | ELECTRONICALLY FILED |

## **COMPLAINT**

Plaintiff Environmental Coordination Services & Recycling, Inc. ("ECS&R"), by and through its attorneys, MacDonald, Illig, Jones & Britton LLP, files this Complaint against Defendants Buck Baldwin ("Baldwin") and Envirothink, Inc. ("Envirothink"), and states the following in support thereof:

### **Nature Of The Civil Action**

1.     Defendant Baldwin was the President of plaintiff ECS&R for over four years. Over a year and a half before ECS&R terminated Baldwin's employment due to the prolonged declining performance of the business under his leadership, Baldwin secretly formed his own company, Envirothink, in order to compete directly with ECS&R for Baldwin's own personal benefit and to the detriment of ECS&R.  After forming Envirothink, Baldwin continued in his position as President of ECS&R while simultaneously developing his own competing company, Envirothink.  Baldwin improperly and covertly used his position as ECS&R's President to misappropriate ECS&R's trade secret confidential and proprietary business and customer

information in order to advance his own interests and further Envirothink's ability to compete with ECS&R.  Baldwin further diverted customers of ECS&R to Envirothink, usurped business opportunities for his own benefit or the benefit of Envirothink, and engaged in other conduct detrimental to ECS&R's interests in order to benefit and enrich himself and Envirothink. Immediately after being terminated from ECS&R, Baldwin continued his work through Envirothink competing improperly with ECS&R by utilizing the trade secret and confidential information Baldwin misappropriated from ECS&R.  As a result of the conduct of Baldwin and Envirothink alleged herein, ECS&R now brings this civil action asserting the following claims: (1) breach of fiduciary duty; (2) violations of the Economic Espionage Act, as amended by the Defend Trade Secrets Act of 2016; (3) misappropriation of confidential information and trade secrets under Pennsylvania's Uniform Trade Secret Act; (4) tortious interference with existing contractual relationships; (5) tortious interference with prospective contractual relationships; (6) unfair competition; and (7) conversion.

## The Parties

2.     Plaintiff ECS&R is a limited liability company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 3237 U.S. Highway 19, Cochranton, Crawford County, Pennsylvania 16314.

3.     Defendant Buck Baldwin is an adult individual residing at 38 Mallard Way, Mercer, Mercer County, Pennsylvania 16137.

4.     Defendant Envirothink, Inc. is a business corporation formed under the laws of the Commonwealth of Pennsylvania with a registered business address of 38 Mallard Way, Mercer, Mercer County, Pennsylvania 16137.

**Jurisdiction and Venue**

5.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Economic Espionage Act of 1996 ("EEA"), 18 U.S.C. §§ 1831-1839, as amended by the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836.

6.      This Court has jurisdiction over ECS&R's state law claims pursuant to 28 U.S.C. § 1367(a) because they are related to the federal claim at issue in this litigation that forms part of the same case or controversy.

7.      This Court has personal jurisdiction over Defendant Baldwin as he resides within the Western District of Pennsylvania, and this Court has personal jurisdiction over Defendant Envirothink as it has its principal place of business within the Western District of Pennsylvania.

8.      Venue is proper in the United States District Court for the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Baldwin resides and Defendant Envirothink has its principal place of business in this District in the Commonwealth of Pennsylvania and a substantial part of the events or omissions giving rise to this matter occurred in this District.

**Factual Background**

**A.      Baldwin's Employment with ECS&R and ECS&R's Trade Secrets and Confidential and Proprietary Information**

9.      ECS&R was formed as a Pennsylvania business corporation in 1992, and since that time it has provided a full range of environmental health and safety, waste management, recycling, and other related services to industrial, academic, residential and business sector customers located throughout Pennsylvania and adjoining states.

10.     ECS&R assists industrial, commercial, residential clients in meeting and abiding by environmental, health and safety regulations and practices.  ECS&R offers a full range of environmental health, safety, and compliance consulting and training services.  ECS&R also provides waste management services, including program design, implementation, and management; materials handling including pumping, packaging, and hauling; and disposal for household waste, universal wastes/electronic waste, hazardous waste, and residual waste. ECS&R also specializes in industrial cleaning, including tank cleaning, pit cleaning, equipment cleaning, and other related services.

11.     Baldwin was hired by ECS&R in the position of Regulatory Consultant in or about 2005, and Baldwin eventually was promoted to Vice President of ECS&R in or about 2013.

12.     In or around December 2013, Baldwin was promoted by ECS&R to the position of President.

13.     Baldwin remained in the position of President of ECS&R until he was terminated, effective March 2, 2017.

14.     As President of ECS&R, Baldwin had primary responsibility for managing and overseeing all aspects of ECS&R's business and operations.

15.     Baldwin's specific day-to-day job responsibilities as President included, but were not limited to, developing new business opportunities and expanding existing operations, soliciting customers and prospective customers to utilize the services of ECS&R, providing fee-based consulting services and training for customers, overseeing the operations of ECS&R's

business, and overall management of ECS&R personnel and assets, and growth and planning strategies.

16.     Baldwin did not have unlimited authority, however, as some specific limitations had been placed on the discretion he had in operating, managing, and overseeing the business of ECS&R.  Specifically, ECS&R's business operated on set margins and rates for services, and Baldwin was specifically informed that, without approval of ECS&R's Chief Executive Officer, Pat Spang, Baldwin did not have authority to lower rates for customers, provide price breaks to customers, or provide services to customers free of charge.

17.     As President of ECS&R, by virtue of occupying a position of trust as an executive officer of ECS&R, Baldwin was granted access and privy to and regularly used a substantial amount of trade secrets and confidential and proprietary business information owned and utilized by ECS&R, including but not limited to trade secrets, data relating to ECS&R's practices and methods of doing business; compensation data; labor relations information; sales and marketing strategies; customers and prospective customers; the status and terms of ECS&R's contracts and business relationships with its customers and prospective customers; the history of ECS&R's business relationships with its customers and prospective customers; new lines of business in development by ECS&R; particularized customer requirements and preferences; particularized customer needs, projects, and scopes of work; pending projects and proposals; the identity, authority and responsibility of key customer contacts; payment methods; costs, pricing, profit and profit margin information; financial information and business plan and computer programs, processes and databases; and customer regulatory information (collectively and without limitation, "Trade Secrets and Confidential and Proprietary Information").

18.     Such Trade Secrets and Confidential and Proprietary Information to which Baldwin had access provided extensive detail regarding clients and prospective clients' identities, needs and preferences, information necessary to quote and service the clients or prospective clients, client-specific pricing, and confidential information about clients and prospective clients, as well as financial and business information of ECS&R, all of which is not generally known to and is not readily ascertainable by proper means, by persons who obtain economic value from its disclosure or use.

19.     All of the Trade Secrets and Confidential and Proprietary Information to which Baldwin had access were owned by ECS&R.

20.     Baldwin was granted access to ECS&R's Trade Secrets and Confidential and Proprietary Information exclusively for the purpose of performing his job duties as President of ECS&R.  Baldwin's access to such Trade Secrets and Confidential and Proprietary Information was not authorized for any other purpose unrelated to the business of ECS&R, including Baldwin's personal gain or to compete with ECS&R, to develop or advance Baldwin's Envirothink business, or to benefit Baldwin and/or other third-parties to ECS&R's detriment.

21.     ECS&R takes reasonable precautions to maintain the secrecy of the Trade Secrets and Confidential and Proprietary Information described above by limiting access to them to those employees having a need to know the same.

22.     Baldwin was fully aware that ECS&R's Trade Secrets and Confidential and Proprietary Information were secret and the exclusive property of ECS&R.  Baldwin knew of the requirement that such Trade Secrets and Confidential and Proprietary Information be treated as confidential and not be used except in the furtherance of ECS&R's business.  During his time as

President of ECS&R, Baldwin even developed employee policies for ECS&R specifically addressing the confidentiality of and prohibitions on disclosing ECS&R's Trade Secrets and Confidential and Proprietary Information.

23.     As President of ECS&R, Baldwin owed fiduciary duties to ECS&R which included, *inter alia*:  a duty to act with the utmost good faith and loyalty to ECS&R; a duty to disclose to ECS&R any potential business opportunities that could potentially benefit ECS&R; a duty not to divert potential business opportunities for his personal benefit or the benefit of a third party; a duty not to act for the benefit of an individual or entity whose interests were adverse to those of ECS&R; a duty not to use or disclose, other than for the benefit of ECS&R, any of ECS&R's Trade Secrets and Confidential and Proprietary Information; a duty to use his professional time, expertise, and experience to further ECS&R's best interests and for ECS&R's benefit and not for his own personal benefit; and a duty not to otherwise act to the detriment of ECS&R.

24.     As an employee and President of ECS&R, Baldwin received compensation in the form of salary, commission, bonuses, and/or benefits from ECS&R, in return for which ECS&R required and expected Baldwin to act in and further the business interests of ECS&R.

25.     ECS&R paid to Baldwin all compensation and benefits to which each was entitled as employees of ECS&R during their time of employment at ECS&R.

26.     The amount of all compensation and the cost of employee benefits provided by ECS&R to Baldwin from July 24, 2015 through March 2, 2017 totals approximately $350,000.

**B.**      **Overview of Improper and Tortious Conduct of Baldwin and Envirothink**

27.      Unbeknownst to ECS&R, upon information and belief, Baldwin incorporated Envirothink on or about July 24, 2015.

28.      Envirothink is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its registered address at 38 Mallard Way, Mercer, Mercer County, Pennsylvania 16137, which is the address of Baldwin's primary personal residence.

29.      Upon information and belief, Baldwin formed Envirothink for his own personal benefit for the purpose and with the intent to compete directly against ECS&R in the same geographic and business areas.  The services that Envirothink provided and provides are in direct competition with the business of ECS&R in the same region(s) where ECS&R operates.

30.      Upon information and belief, while still employed as President of ECS&R and around the time Baldwin formed Envirothink, Baldwin began utilizing his position as President of ECS&R and his knowledge of and access to ECS&R's Trade Secrets and Confidential and Proprietary Information to divert existing and potential customers and business opportunities of ECS&R to Envirothink and/or for his own personal benefit.

31.      Upon information and belief, over the past several years, Baldwin has misappropriated and used the proprietary and confidential information he had acquired from ECS&R and had access to as President of ECS&R to operate and grow Envirothink into a viable and successful company, providing services that directly compete with the business of ECS&R.

32.      Upon information and belief, while employed as President of ECS&R, Baldwin operated Envirothink as a shadow company mirroring the business of ECS&R, stealing ECS&R customers, using the assets and business resources of ECS&R to start and conduct the business of

Envirothink, using the trade secrets and knowledge of ECS&R personnel, diverting customers and business opportunities of ECS&R to himself and to Envirothink, engaging in efforts to disguise his deceits, and engaging in conduct detrimental to ECS&R and its business interests.

33.     Immediately following his termination from ECS&R, Baldwin began openly working for Envirothink although, upon information and belief, Baldwin was employed by or otherwise was providing services to Envirothink before his termination from ECS&R.

34.     As a trusted advisor, fiduciary, employee, and executive of ECS&R, Baldwin had the ability to conduct his disloyal, self-serving, and improper activities undetected for several years.

35.     Upon information and belief, while he was an employee of ECS&R, Baldwin was diverting customers from ECS&R to Envirothink, usurping business opportunities of ECS&R for the benefit of himself and/or others, and otherwise engaging in conduct detrimental to the interests of ECS&R.

36.     Upon information and belief, while employed as President by ECS&R, Baldwin owned and operated Envirothink and received compensation from Envirothink and thereby personally benefitted by diverting existing and potential customers of ECS&R to Envirothink and/or for providing services to or on behalf of Envirothink and its customers.

37.     Upon information and belief, while he was President of ECS&R, Baldwin engaged, without limitation, in the following conduct:

  a.     diverted customers of ECS&R to Envirothink while employed by ECS&R;

  b.     usurping business opportunities of ECS&R for the benefit of himself and/or Enviorthink;

c.  diverted existing and potential customers of ECS&R to Envirothink;

d.  utilized and disseminated to others trade secrets and confidential information belonging to ECS&R to compete with ECS&R;

e.  induced existing customers of ECS&R to terminate their contractual relationships with ECS&R and to transfer their work to Envirothink; and

f.  engaged in other conduct detrimental to the interests of ECS&R and/or intended to benefit himself and/or Envirothink.

38.  Baldwin actively and fraudulently concealed his activities involving Envirothink, including through the use of alternative e-mail addresses and by conducting business for the benefit of himself and Envirothink under the name of ECS&R and using the resources of ECS&R for his own benefit or the benefit of Envirothink.

39.  Given the position of trust and confidence occupied by Baldwin, and his active and fraudulent concealment of his activities, ECS&R did not know or have reason to know of these unlawful activities until after Baldwin's employment was terminated due to the overall poor performance of ECS&R over the prior few months under Baldwin's leadership.  It was not until after Baldwin's separation from ECS&R that ECS&R began to uncover Baldwin's improper activities described herein.

40.  ECS&R has now discovered that ECS&R poor performance under Baldwin's leadership as President of ECS&R was the result of and caused by Baldwin's improper and tortious actions and omissions that were undertaken by Baldwin for the personal benefit of Baldwin, Envirothink and/or third-parties to the detriment of ECS&R.

C.      **Specific Instances of Disloyal, Improper, and Tortious Conduct**

41.     While employed as President of ECS&R and around the time he secretly formed Envirothink, Baldwin undertook a series of actions involving Austin Master Services and potentially other related entities (collectively, "Austin Master") for his own personal benefit and the benefit of Envirothink and/or Austin Master and to the detriment of ECS&R.

42.     Upon information and belief, among other things, Baldwin arranged a "kickback" scheme involving the handling and processing of a waste stream from an existing ECS&R customer whereby the processing of the customer's waste stream was invoiced to appear as if Austin Master was involved in the processing or handling of the waste stream when in reality, the waste was sent directly from the customer to the end processor without any involvement by Austin Master whatsoever.  As a result, without providing any services, Austin Master received an approximately eighty-five dollar ($85.00) payment for every load of the waste stream from ECS&R's customer, which cut into ECS&R's profit margin on each load.  Upon information and belief, this kickback scheme was set up by Baldwin to benefit himself, Envirothink and/or Austin Master to further Baldwin's own self-interests to the detriment of ECS&R.

43.     Upon information and belief, Baldwin also engaged in other activities that benefitted himself, Envirothink, and/or Austin Master to the detriment of ECS&R in an effort to cultivate business for himself or Envirothink directly with Austin Master, including but not limited to:  performing hundreds of hours of consulting work for Austin Master without billing Austin Master for the services on behalf of ECS&R; developing and setting up new business ideas or opportunities at Austin Master's facilities, including the condensate separation work and truck cleaning services, using ECS&R equipment, resources, and employees which business was

then taken over by or given to Austin Master to perform directly without any compensation or benefit to ECS&R; consulting with Austin Master's personnel regarding potential business dealings or opportunities between Austin Master's and competitors of ECS&R; permitting Austin Master to directly operate and utilize the ECS&R equipment, including a heavy trucking equipment vehicle worth around $250,000, despite the fact that doing so was outside of the scope of ECS&R's insurance coverage for the equipment; using ECS&R equipment and employees for Austin Master's work without compensation to ECS&R; directing that ECS&R equipment be delivered to Austin Master for its use despite the fact that such equipment was scheduled to be used for work for other ECS&R customers; and letting Austin Master set pricing for the use of ECS&R's services or equipment, if Austin Master was billed at all.

44.     In addition, upon information and belief, shortly after Baldwin formed Envirothink, Baldwin began using private online cloud storage on Google Drive to save and store information and documentation relating to oil and gas related work done by him for Austin Master.  Baldwin used a private cloud storage for this Austin Master-related work despite the fact that ECS&R had switched over to the use of Microsoft Office 365's cloud storage and a private ECS&R network drive for the storage of all ECS&R-related business files and information. Upon information and belief, Baldwin began using the private cloud storage on Google Drive to hide from ECS&R the services and work he was performing for Austin Master on behalf of Envirothink and/or for his own personal benefit and to the detriment of ECS&R.

45.     The day after Baldwin's termination of employment from ECS&R, Austin Master contacted ECS&R to sever all ties and end all commercial relationships with ECS&R.  Upon

information and belief, Austin Master has continued its relationship with Baldwin and Envirothink since that time.

46.     Upon information and belief, while employed as President of ECS&R, Baldwin used ECS&R employees to benefit Envirothink and himself personally to the detriment of ECS&R.

47.     Upon information and belief, while employed as President of ECS&R, Baldwin consulted with or assisted companies that were direct competitors of ECS&R for the benefit of Envirothink or Baldwin personally.

48.     Upon information and belief, while employed as President of ECS&R, Baldwin engaged in side-deals and discounted pricing through ECS&R in a manner that exceeded his authority.

49.     Upon information and belief, while employed as President of ECS&R, Baldwin hired his father to become an ECS&R employee and receive benefits through ECS&R, and Baldwin permitted his father to clock-in and be paid through ECS&R at times when he was not performing any services for ECS&R.

### D.      Baldwin's and Envirothink's Ongoing Improper and Tortious Conduct Leading Up to and Since the End of Baldwin's Employment with ECS&R

50.     In late 2016 and early 2017, as a result of ECS&R's prolonged declining performance under Baldwin's leadership as President of ECS&R, ECS&R's Board of Directors began questioning Baldwin regarding ECS&R's recent financial performance.

51.     As a result of ECS&R's performance under his leadership and/or the resulting questions regarding his and ECS&R's performance, upon information and belief, Baldwin had

reason to believe in late 2016 and early 2017 that his employment at ECS&R might be terminated in the near future.

52.     Upon information and belief, by at least late 2016 and early 2017, Baldwin began accessing and saving ECS&R Trade Secrets and Confidential and Proprietary Information in order to use that information to improperly compete with ECS&R through Envirothink.

53.     A forensic review of Baldwin's ECS&R issued laptop reveals activity on Baldwin's laptop on multiple online cloud storage sites, including Google Drive and Dropbox, which, upon information and belief, reveals that Baldwin accessed and saved ECS&R's Trade Secrets and Confidential and Proprietary Information, including ECS&R customer and program development information, on the private cloud storage sites to which Baldwin and/or Envirothink alone had access.  Baldwin's access and storage of ECS&R's Trade Secrets and Confidential and Proprietary Information on these private storage sites was concealed by Baldwin from ECS&R.

54.     Some, if not all, of the ECS&R Trade Secrets and Confidential and Proprietary Information accessed by Baldwin during this time was ECS&R customer, service, or project development information that Baldwin had no reason to access for purposes of fulfilling his day-to-day duties as President of ECS&R.

55.     Upon information and belief, Baldwin's sole reason for utilizing the cloud storage on Google Drive and Dropbox, for accessing saving ECS&R's Trade Secrets and Confidential and Proprietary Information in those or other locations, and for concealing this conduct from ECS&R was to enable Baldwin and/or Envirothink to benefit from this ECS&R Trade Secrets and Confidential and Proprietary Information and to use that information in business competition against ECS&R following the end of his employment with ECS&R.

56.     For example, on the evening of March 1, 2017, Baldwin believed his employment at ECS&R would be terminated at an early meeting scheduled for 7:30 a.m. the following morning, and Baldwin left a voice message on the cellular phone of ECS&R's now-current President, Sean Spang, stating:  "I'm assuming by your text that you guys are letting me go in the morning …."  The following morning of March 2, 2017, before the 7:30 a.m. meeting at ECS&R at which his employment was terminated, at approximately 5:00 a.m. Baldwin accessed from ECS&R's private server multiple Environmental Health & Safety Consulting Services quotes prepared by another ECS&R employee for an ECS&R client for whom Baldwin did not have day-to-day responsibility for servicing and with whom Baldwin did not have any direct client relationship.   These Environmental Health & Safety Consulting Services quotes revealed the services that ECS&R performed for the client and specific pricing information for ECS&R's services.  Upon information and belief, Baldwin accessed and saved these consulting quotes for the express purpose of using this confidential and trade secret information to improperly and unfairly compete against ECS&R following his termination.   Upon information and belief, utilizing the ECS&R Trade Secrets and Confidential and Proprietary Information he downloaded from ECS&R's internal server hours before he knew he would be terminated, Baldwin and Envirothink subsequently solicited this client of ECS&R and sought through Envirothink to perform directly the services covered in ECS&R's quote to ECS&R's client.

57.     Upon information and belief, Baldwin has similarly solicited multiple other customers or prospective customers of ECS&R, including customers with whom Baldwin did not have any day-to-day interaction or direct responsibility, following his termination, and utilizing ECS&R Trade Secrets and Confidential and Proprietary Information improperly obtained while

still President of ECS&R, including customer need and pricing information, Baldwin has offered to provide for these customers or prospective customers "all the same services as ECS&R."

58.     In another instance following his termination from ECS&R, upon information and belief, Baldwin solicited work from another existing ECS&R customer on behalf of Envirothink, and Baldwin informed ECS&R's customer that the prior relationship and ongoing work involving that customer and Austin Master was set up through Baldwin directly and not through ECS&R, despite the fact that Baldwin was President of ECS&R at the time he set up the relationship and work.  Baldwin thus represented that the work being done by him while employed as President of ECS&R was actually being done by him individually, or through Envirothink, and not in his capacity as President of ECS&R.

59.     Upon information and belief, Baldwin has also solicited ECS&R's existing or prospective customers by spreading disparaging and untrue information about ECS&R and by misrepresenting the circumstances surrounding ECS&R's termination of Baldwin's employment.

60.     In mid-April 2017, upon information and belief, Baldwin and Envirothink improperly gained access to multiple accounts that ECS&R controls and maintains with Pennsylvania's Department of Environmental Protection ("DEP") through the DEPGreenPort site. The DEPGreenPort site is utilized by ECS&R as the link between ECS&R's customers/clients and the DEP, including for permit applications and other services.  The ECS&R controlled and maintained accounts contain ECS&R Trade Secrets and Confidential and Proprietary Information, and Baldwin's and Envirothink's access to these DEPGreenPort accounts gives them access to non-public information about ECS&R's customers and clients that may be utilized by Baldwin and Envirothink to improperly and unfairly compete with ECS&R for business from

these customers.  Baldwin improperly gained access to these ECS&R controlled and maintained DEP accounts despite the fact that all of the log-in information for these accounts was changed following the termination of Baldwin's employment with ECS&R.

### COUNT I
### Breach of Fiduciary Duty
### (ECS&R v. Baldwin)

61.     Paragraphs 1 through 60 are hereby incorporated by reference.

62.     By virtue of his position as President, Baldwin occupied a position of trust and confidence at ECS&R and owed fiduciary duties to ECS&R, including *inter alia* a duty to act with loyalty and the utmost good faith to advance the interests of ECS&R and not to act or to agree to act during his employment for persons or companies in competition with ECS&R.

63.     As set forth above, while still employed by ECS&R as President, Baldwin: undertook a scheme and course of conduct to benefit himself and his own business, Envirothink, to the detriment of ECS&R; founded, developed, and built his own business Envirothink in competition with ECS&R; misappropriated ECS&R's Trade Secrets and Confidential and Proprietary Information for use by himself and Envirothink to compete with ECS&R; used or misused the assets and business resources of ECS&R to benefit himself and Envirothink or other third parties to the detriment of ECS&R; diverted customers or potential customers of ECS&R to benefit himself and Envirothink; interfered or attempted to interfere with ECS&R's contractual relationships; diverted or usurped business opportunities of ECS&R; and engaged in other conduct detrimental to ECS&R and/or intended to further his own personal interests or the interests of Envirothink.

64.     Baldwin's conduct breached the fiduciary duties he owed to ECS&R.

65.     Moreover, Baldwin has a continuing duty not to use information entrusted to him while he was employed by ECS&R for the benefit of himself or others.

66.     Upon information and belief, Baldwin has violated that continuing duty of confidentiality by continuing to use or conveying to third parties confidential information concerning, *inter alia*, ECS&R's business relationships with its customers, in violation of his duties to ECS&R.

67.     Baldwin's conduct is willful, malicious, outrageous and ongoing, and ECS&R is entitled to punitive damages.

68.     As a direct and proximate result of Baldwin's breach of his fiduciary duties, ECS&R has suffered commercial and economic harm, damages, expenses, and financial loss in an amount to be proven at trial.

69.     Baldwin also caused and will cause irreparable injury to ECS&R, including loss of customers, loss of customer goodwill, loss of competitive position, potential loss of future business, misuse of trade secrets and confidential and proprietary information, and actual or threatened loss of customer accounts.  No amount of money can fully and adequately compensate ECS&R for these losses and ECS&R's remedies at law are inadequate.

70.     Unless he is enjoined, Baldwin will continue to breach his continuing common law duties to ECS&R, and such breaches will endanger the legitimate business interests of ECS&R by jeopardizing its competitive position vis-à-vis its competitors, including Envirothink.

**COUNT II**
**Economic Espionage Act, As Amended By**
**Defend Trade Secrets Act Of 2016, 18 U.S.C. § 1831-1839**
**(ECS&R v. Baldwin and Envirothink)**

71.     Paragraphs 1 through 70 are hereby incorporated by reference.

72.     ECS&R owns the Trade Secrets and Confidential and Proprietary Information defined above.

73.     ECS&R also is entrusted with control of confidential business information owned by its clients.

74.     The Trade Secrets and Confidential and Proprietary Information owned or controlled by ECS&R, as described herein, are "trade secrets" as defined by 18 U.S.C. § 1839(3).

75.     The trade secrets owned by ECS&R, as referenced herein, are related to and/or intended to be used and are used in interstate commerce.

76.     Baldwin and Envirothink, with the intent to convert the trade secrets owned by ECS&R to the economic benefit of persons or entities other than ECS&R, and intending and/or knowing that ECS&R will be injured,

> a.     stole and/or without authorization appropriated, took and by fraud, artifice and deception obtained ECS&R's trade secrets; and/or
>
> b.     without authorization copied, duplicated, downloaded, uploaded, transmitted, sent, communicated and/or conveyed such information to himself and to unauthorized third persons.

77.     Baldwin and Envirothink, with the intent to convert the trade secrets owned by ECS&R to their own economic benefit, and intending and/or knowing that ECS&R will be injured,

> a.     received, bought and/or possesses ECS&R's trade secrets, knowing the same to have been stolen or appropriated, obtained or converted without authorization; and/or

b.      attempted to steal, misappropriate, copy, duplicate, transmit, send, communicate, receive and/or possess ECS&R's trade secrets.

78.      The actions of Baldwin and Envirothink as described above constitute violations of the Economic Espionage Act, as amended by the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831-1839.

79.      Baldwin and Envirothink had no lawful or legitimate commercial purpose for this conduct.

80.      Upon information and belief, Baldwin and Envirothink shared or intend to share tangible copies of said trade secrets with others, and have disclosed and/or used trade secrets of ECS&R for the benefit of themselves and to the detriment of ECS&R.

81.      The actions of Baldwin and Envirothink described herein were willful and malicious.

82.      Based upon the foregoing, ECS&R is entitled to injunctive relief and money damages for actual loss from Baldwin's and Envirothink's misappropriation of its trade secrets, damages for unjust enrichment as a result of their misappropriation of its trade secrets, exemplary damages arising from their willful and malicious misappropriation of its trade secrets, and attorneys' fees, investigative and forensic consulting fees and other expenses.

**COUNT III**
**Misappropriation of Confidential Information and**
**Trade Secrets - Pennsylvania Uniform Trade Secret Act**
**(ECS&R v. Baldwin and Envirothink)**

83.      Paragraphs 1 through 82 are hereby incorporated by reference.

84.     While employed by ECS&R in a position of trust and confidence, Baldwin was exposed to or otherwise obtained ECS&R's Trade Secrets and Confidential and Proprietary Information defined above.

85.     ECS&R's Trade Secrets and Confidential and Proprietary Information constitutes legally protectable trade secrets as defined by the Pennsylvania Uniform Trade Secret Act, 12 Pa. C.S. § 5301, *et seq.*

86.     ECS&R's Trade Secrets and Confidential and Proprietary Information has actual or potential economic value because - both individually and in combination - it is not generally known to, and is not readily ascertainable by proper means by ECS&R's competitors.

87.     ECS&R has taken measures that are reasonable under the circumstances to protect the confidentiality of the foregoing information.

88.     Upon information and belief, Baldwin and Envirothink have obtained and used such trade secrets by improper means.

89.     Upon information and belief, Baldwin and Envirothink have misappropriated, utilized, and disclosed and, unless enjoined by this Court, will continue to misappropriate, utilize, and disclose ECS&R's trade secrets.

90.     In addition or in the alternative, Baldwin and Envirothink inevitably will use and disclose such trade secrets to and for the benefit of themselves and/or ECS&R's competitors.

91.     Upon information and belief, Baldwin and Envirothink have used, intend to use or inevitably will use ECS&R's trade secrets to the detriment of ECS&R and to the unjust benefit of themselves and/or ECS&R's competitors.

92.     Upon information and belief, Envirothink obtained the foregoing trade secrets and confidential information from Baldwin and, at the time of disclosure or use, knew or had reason to know that their knowledge of this information was derived from or through improper means.

93.     Upon information and belief, Baldwin's and Envirothink's misappropriation and misuse of ECS&R's trade secrets was and is willful and malicious so as to entitle ECS&R to punitive damages.

94.     ECS&R has suffered harm and damages as a direct and proximate result of Baldwin's and Envirothink's conduct.

95.     Baldwin's and Envirothink's misappropriation and misuse of ECS&R's trade secrets has caused and will cause irreparable harm to ECS&R, including loss of customers, loss of customer goodwill, loss of competitive position, potential loss of future business and actual and threatened loss of ECS&R's customer accounts.  No amount of money can fully and adequately compensate ECS&R for these losses and ECS&R's remedies at law are inadequate.

## COUNT IV
### Tortious Interference with Existing Contractual Relationships
### (ECS&R v. Baldwin and Envirothink)

96.     Paragraphs 1 through 95 are hereby incorporated by reference.

97.     ECS&R maintains long-term contractual relationships with its customers and clients.

98.     Upon information and belief, Baldwin and Envirothink have intentionally and improperly interfered with, and continue to interfere with, ECS&R's existing contractual relationships with its customers and clients by utilizing ECS&R's Trade Secrets and Confidential

and Proprietary Information to induce or otherwise cause them not to perform said contractual relations.

99.     Such interference by Baldwin and Envirothink is not privileged.

100.     As a direct and proximate result of Baldwin's and Envirothink's wrongful conduct, ECS&R has suffered commercial and economic harm, damage, expenses, and financial loss in an amount to be proven at trial.

101.     Also as a direct and proximate result of Baldwin's and Envirothink's wrongful conduct, ECS&R has suffered and immediate and irreparable harm and will continue to suffer such harm and damage unless and until Baldwin and Envirothink are enjoined from their wrongful conduct.  ECS&R's remedies at law are not adequate to fully compensate ECS&R for the harm and damage caused by Baldwin and Envirothink.

**COUNT V**
**Tortious Interference with Prospective Contractual Relationships**
**(ECS&R v. Baldwin and Envirothink)**

102.     Paragraphs 1 through 101 are hereby incorporated by reference.

103.     Upon information and belief, Baldwin and Envirothink have intentionally and improperly interfered with, and continue to interfere with ECS&R's prospective contractual relationships with existing and prospecting customers and clients by utilizing ECS&R's Trade Secrets and Confidential and Proprietary Information to induce or otherwise cause them not to enter into contracts with ECS&R or not to renew contracts with ECS&R.

104.     Such interference by Baldwin and Envirothink is not privileged.

- 23 -

105.     As a direct and proximate result of Baldwin's and Envirothink's wrongful conduct, ECS&R has suffered commercial and economic harm, damage, expenses, and financial loss in an amount to be proven at trial.

106.     Also as a direct and proximate result of Baldwin's and Envirothink's wrongful conduct, ECS&R has suffered and immediate and irreparable harm and will continue to suffer such harm and damage unless and until Baldwin and Envirothink are enjoined from their wrongful conduct.  ECS&R's remedies at law are not adequate to fully compensate ECS&R for the harm and damage caused by Baldwin and Envirothink.

### COUNT VI
### Unfair Competition
### (ECS&R v. Baldwin and Envirothink)

107.     Paragraphs 1 through 106 are hereby incorporated by reference.

108.     ECS&R has a legitimate business interest in the Trade Secrets and Confidential and Proprietary Information that are in the possession of Baldwin and Envirothink, as alleged above, and in protecting its customer relationships from unlawful interference.

109.     Upon information and belief, Baldwin and Envirothink, acting alone or in concert with others, have engaged in deliberate acts of unfair competition against ECS&R including, but not limited to:  (a) violations of the fiduciary and common law duties of loyalty, good faith and fair dealing that they owed to ECS&R; (b) breach of their continuing duty of confidentiality to ECS&R; (c) misappropriation and wrongful retention, use and disclosure of ECS&R's Trade Secrets and Confidential and Proprietary Information; and (d) unlawful interference with ECS&R's actual and prospective contractual relationships.

110.    As a direct and proximate result of Baldwin's and Envirothink's wrongful conduct, ECS&R has suffered commercial and economic harm, damage, expenses, and financial loss in an amount to be proven at trial.

111.    Also as a direct and proximate result of Baldwin's and Envirothink's wrongful conduct, ECS&R has suffered and immediate and irreparable harm and will continue to suffer such harm and damage unless and until Baldwin and Envirothink are enjoined from their wrongful conduct.  ECS&R's remedies at law are not adequate to fully compensate ECS&R for the harm and damage caused by Baldwin and Envirothink.

**COUNT VII**
**Conversion**
**(ECS&R v. Baldwin and Envirothink)**

112.    Paragraphs 1 through 111 are hereby incorporated by reference

113.    Baldwin and Envirothink intentionally and without justification took, retained, and otherwise misappropriated the Trade Secrets and Confidential and Proprietary Information or other information belonging to or controlled by ECS&R during Baldwin's employment by ECS&R and upon and following his termination from ECS&R.

114.    Baldwin's and Envirothink's retention of such information has deprived ECS&R of its use, possession and benefit of the misappropriated items and information.

115.    It is believed and therefore averred that Baldwin and Envirothink have converted the materials set forth above herein which is the rightful property of ECS&R.  Some or all of this information may be contained on Baldwin's and Envirothink's yet undisclosed home personal or business computers, smartphones and/or stored on USB mass storage devices or other storage medium, as well as in hard copy form.

116.     It is believed and therefore averred that the aforementioned acts of Baldwin and Envirothink were done intentionally, wantonly, maliciously, and with the intent of harming ECS&R and its business relationships with its clients.   Such acts were done with reckless indifference to the interests of ECS&R so as to warrant an award of punitive damages.

117.     As the direct and proximate result of the intentional, inappropriate, tortious, illegal and wrongful retention, misappropriation and conversion of its Trade Secrets and Confidential and Proprietary Information by Baldwin and Envirothink, ECS&R has suffered commercial and economic harm, damage, expenses, and financial loss in an amount to be proven at trial.

118.     Also as a direct and proximate result of Baldwin's and Envirothink's wrongful conduct, ECS&R has suffered and immediate and irreparable harm and will continue to suffer such harm and damage unless and until Baldwin and Envirothink are enjoined from their wrongful conduct.   ECS&R's remedies at law are not adequate to fully compensate ECS&R for the harm and damage caused by Baldwin and Envirothink.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Environmental Coordination Services & Recycling, Inc. d/b/a ECS&R respectfully requests this Honorable Court to grant the following relief:

1.     Enter an award in favor of ECS&R and against Baldwin and Envirothink for compensatory damages and/or an equitable accounting and disgorgement of any and all profits or compensation arising from their unlawful conduct, reimbursement of all costs and expenses, including forensic consultant and attorneys' fees, incurred by ECS&R in connection with this litigation, punitive and exemplary damages, all in an amount to be proven at trial;

2.     Enter an award of monetary damages in an amount of at least $350,000 to ECS&R for the amount of all compensation and monies and the cost of employee benefits that ECS&R paid to or provided for Baldwin during the period when he was in breach of his fiduciary duties owed to ECS&R and was engaging in an unlawful and tortious conduct detrimental to ECS&R;

3.     Enter an award of monetary damages to ECS&R in an amount to be proven at trial for lost profits and loss of customer goodwill resulting from Baldwin's and Envirothink's breach of fiduciary duties, tortious interference with existing or prospective contractual relations, misappropriation of trade secrets and confidential information, and conversion;

4.     Issue a permanent injunction against Buck Baldwin and Envirothink, Inc., their agents, servants, employees, consultants, attorneys, and any person in active concert or participation with them who receives actual notice of the order, enjoining, restraining and/or directing them:

a.     from copying, concealing, destroying, using, selling, or otherwise disclosing Trade Secrets and Confidential and Proprietary Information owned by ECS&R;

b.     from tortiously interfering with ECS&R's existing and prospective contractual relationships with ECS&R's customers and prospective customers;

c.     from being employed by, providing services to, or having any dealings, directly or indirectly, with any customer or prospective customer of ECS&R whom Baldwin or Envirothink tortiously interfered with or contacted, solicited, or sought business or work from utilizing ECS&R's

Trade Secrets and Confidential and Proprietary Information or otherwise in breach of Baldwin's fiduciary duties owed to ECS&R.

d.    to immediately return to ECS&R all of ECS&R's Trade Secrets and Confidential and Proprietary Information and any other materials or information in their possession, custody or control that was improperly obtained, retained, or utilized by Baldwin or Envirothink, including, but not limited to, any documents, records, computer files, computer hard drives, computer disks, external memory or storage devices, memory cards and other electronic data storage media; and

e.    ordering such other relief that is just and proper under the circumstances.

5.    Enter an award directing reimbursement of all costs and expenses, including attorneys' and consultant fees, incurred by ECS&R in connection with this litigation;

6.    Enter an award of punitive and exemplary damages; and

7.    Award such other relief as the Court deems proper under the circumstances.

**<u>A JURY TRIAL IS HEREBY DEMANDED</u>.**

Respectfully submitted,

s/Matthew W. McCullough
_____
Matthew W. McCullough
PA I.D. No. 46950
Mark T. Pavkov
PA I.D. No. 313021
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7602
(814) 454-4647 FAX
mmccullough@mijb.com
mpavkov@mijb.com

Attorneys for Plaintiff
    Environmental Coordination Services &
    Recycling, Inc. d/b/a ECS&R

1523070v1A